JUAN PIERESCHI VALLET, Petitioner and Appellee, *v.* COMMISSIONER OF AGRICULTURE AND COMMERCE ET AL., Respondents and Appellees.

No. 9067. Argued June 1, 1945.—Decided July 6, 1945.

---

*Jesús A. González, Acting Attorney General,* and *Ramón Gandía Biscombe, Deputy Attorney General,* for appellant. *José Sabater* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

Juan Piereschi Vallet filed a petition for mandamus in the District Court of Mayagüez wherein he prayed that the Commisioner of Agriculture and Commerce, as President of the Puerto Rican Coffee Price Stabilizing Corporation,[1] the general manager of said corporation and the paymaster thereof be ordered to pay him the amount of $29.18, which is the subsidy on coffee that corresponds to him by virtue of coffee which he sold to the United States Army out of his surplus quota and for export, and which he retained subject to the payment of the subsidy to the grower of said coffee. It was briefly alleged in the petition as follows:

That in March 1942, Juan Mari Ramos, coffee dealer of Mayagüez, entered into business transactions with the United States Army whereby he was to sell 400 tons of Puerto Rican coffee, which amount constituted a surplus over the amount fixed for local consumption and which could be exported. Mr. Mari sought authorization from the Commis-

---

[1] This corporation was created by Act No. 156 approved May 8, 1940.

sioner of Agriculture and Commerce, as President of the Puerto Rican Coffee Price Stabilizing Corporation, in order to make said sale from his quota for export, and was authorized by said officer by virtue of a telegram which is copied in the petition and reads thus: "Santurce, March 25–42. Juan Mari Ramos, Mayagüez. Referring to invitation to a bid sale of coffee, relying on opinion of Attorney General of Puerto Rico and of Army's Judge Advocate you are hereby authorized to submit bids for coffee from your quota for export for the exclusive use of the Army and Navy. Signed Isidoro A. Colón, Commissioner of Agriculture and Commerce."

Pursuant to this telegram, Mr. Mari sold and delivered the 400 tons of coffee to the United States Army for its exclusive use. Of those 400 tons of coffee, there were 3,342 pounds which belonged to petitioner, Juan Piereschi Vallet.

On June 13, 1942, Mr. Mari demanded by letter from Mr. Vicente Medina, general manager of the aforesaid corporation, payment of the subsidy for the growers of said coffee, and Mr. Medina refused to consider the coffee sold to the Army as for export and refused to make payment, despite the fact that his attention was called to the telegram above copied authorizing the sale.

It was further alleged that the sale of the 3,243 pounds of coffee constitutes a quota for export of 1,459 pounds which, at the rate of $2 per ton, amounts to $29.18 which the corporation owes to petitioner, it being the duty of the respondents to pay said amount as subsidy to the petitioner.

Lastly, the petitioner alleged that respondents had sufficient funds to make the disbursement sought out of the Special Fund created by law for the payment of said subsidy and that despite the demands made, the defendants had refused to make payment.

In their answer to the petition the defendants accepted some of the facts and denied others, and by way of special

defense they alleged that the petition did not state facts sufficient to constitute a cause of action. On the day set for the hearing the defendants stated that they accepted the facts alleged in the petition and that they submitted the case on the legal question raised in the special defense.

The lower court dismissed the special defense and sustained the petition. The defendants appealed and contend that the lower court erred in dismissing the demurrer, in sustaining the petition, and in failing to decide that the petition was academic.

The main ground of appellants' contention that the petition does not state sufficient facts, is that it fails to allege "that it was a real and true fact that the coffee of the petitioner, included in the sale made by Mr. Mari . . . . to the Army of the United States in Puerto Rico, would have been exported from the Island of Puerto Rico which is the statutory prerequisite for the payment of the subsidy." And they argue that the fact that petitioner alleges that the coffee sold to the Army was from his quota for export, "does not mean, nor may it be understood, that it had been sent out of the Island as coffee exported."

Act No. 156 of 1940, creating the Puerto Rican Coffee Price Stabilizing Corporation, provides in its § 4 that the object of the corporation is "to keep the price of the coffee produced in Puerto Rico at a level sufficient to afford the growers thereof a reasonable profit . . ." and in order to fulfill this purpose it was further provided in said Section that the corporation would have power " . . . to grant subsidies on coffee exported . . . "

It is under another law, Act No. 157 of March 8, 1940, that the funds for the payment of subsidies are provided. Section 3 thereof provides for a special tax of one and one-half cents on each pound of raw coffee sold in Puerto Rico, whether for consumption in the Island or for export. And § 4 provides:

"From the proceeds of the special tax so collected and also from any amount received by reason of fines imposed for violations of this Act, the Treasurer of Puerto Rico shall set aside the sum of not more than fifty thousand (50,000) dollars a year, to be credited to the 'Fund for the Development of a Market for Puerto Rican Coffee' created in Section 5 of this Act, and not less than two hundred thousand (200,000) dollars a year to the payment of subsidies on coffee exported and which shall pass exclusively to the grower producing the coffee so exported; and the balance of said tax, after such amounts are deducted, shall pass to form a part of the capital of said corporation; Provided, That the subsidy shall not exceed in any year the sum of five (5) dollars a hundredweight of coffee exported."

In our opinion, the defendants are technically correct in their theory that the petition does not allege that the coffee sold by Mr. Mari to the Army was exported and that the statutes above-referred to only authorize the payment of the subsidy to the grower for the surplus coffee which has been exported. Nevertheless, the Commissioner of Agriculture and Commerce authorized said sale as part of the quota for export, relying on the favorable opinion of the Attorney General and of the Army's Judge Advocate. Mr. Mari did not act independently, but he consulted the officer charged with the duty of enforcing the statutes regarding the sale of coffee, as to whether he could carry out the transaction with the Army and sell the coffee as his quota for export and he was expressly authorized to do so. It does not seem to us that the attitude taken by the respondents herein, among them the Commissioner of Agriculture and Commerce, is the proper one. The coffee having been sold by the petitioner and other growers, as part of their quotas for export, to insist now that said sale to the Army does not constitute an export, is to deprive said growers from the subsidy which corresponded to them if they had exported said quotas. We do not believe it is just and equitable that because they acted in a manner properly authorized by the Commissioner of Agriculture and Commerce before making the sale to the

Army, they should be deprived of the subsidy. We should not overlook the date on which this transaction was carried out, March 1942, that is, when we first began to take part in the World War. The sale of coffee to the armed forces was surely authorized by the Commissioner of Agriculture and Commerce, as quota for export, in order to contribute to the war effort as part of the cooperation which all of us, but especially the Insular Government, should willingly render. After having obtained the official authorization it was not incumbent on Mr. Mari or on the other coffee growers, to investigate whether, as a matter of fact, the Army used the coffee in Puerto Rico or exported it to be used by the armed forces outside of the Island. Either event could have occurred. Under the surrounding circumstances, the lower court did not err in overruling the demurrer, and according to the allegations of the petition accepted as true by the defendants, neither did it err in sustaining the petition and ordering the payment as prayed.

As to the third assignment of error, it lacks merit. It is true that Act No. 17 of November 27, 1942 (Laws of 1942, Spec. Sess. Laws, p. 72) repealed Acts Nos. 156 and 157 of 1940, and by § 2 thereof it expressly dissolved the Puerto Rican Coffee Price Stabilizing Corporation. However, said Section contains a provision under which said corporation subsisted, among other purposes: ". . . for the sale and liquidation of the coffee which it has unsold *and the payment of subsidies. . .*"

Besides, in the petition it was also alleged that "There are sufficient funds for the payment of said subsidies in the possession of the defendants, that is, as soon as it is ordered by the defendants to be paid out of the Special Fund created by the Act providing for the payment of the aforesaid subsidy ... " And this fact was accepted by the defendants.

The judgment appealed from shall be affirmed.